# EXHIBIT J

IN THE IOWA DISTRICT COURT IN AND FOR JOHNSON COUNTY

| | | |
|---|---|---|
| EPIC SYSTEMS CORPORATION, | ) | |
| | ) | |
| Plaintiff, | ) | No. EQCV078016 |
| | ) | |
| vs. | ) | RULING |
| | ) | |
| UNIVERSITY OF IOWA HOSPITALS AND CLINICS, | ) ) | |
| | ) | |
| Defendant. | ) | |

On July 17, 2017, this matter came before the Court for trial. Attorney Joseph Younker appeared for the Plaintiff, Epic Systems Corporation (hereinafter Epic). Attorney Gay Pelzer appeared on behalf of Defendant, University of Iowa Hospitals and Clinics (hereinafter UIHC). The anonymous requester of records was notified of the trial. However, no parties intervened in this matter and no one responded to a page in the courthouse for anyone with an interest in this matter.

The parties filed their Joint Statement of Stipulated Facts on July 7, 2017, which the Court adopts. By stipulation of the parties and prior approval of the Court, Shawn Kiesau of Epic was permitted to testify by affidavit, which was received by the Court as Exhibit 2. The Court received additional exhibits as shown in the record. The Court heard the arguments of counsel and took the matter under advisement.

This trial concerns an open records request. In 2015, an anonymous requester sent an open records request by email for correspondence from Epic to UIHC about a company called KLAS Enterprises, L.L.C. (hereinafter KLAS). KLAS is an organization that creates industry reports about health care technology products. Epic develops and licenses a suite of health care information software products, including electronic medical record software, for use by hospital systems and other health care provider organizations. UIHC is one of Epic's customers. Upon receiving the anonymous request for records by email, UIHC searched for responsive documents and identified an email from an Epic employee, Andy Pung. There were nine attachments to the email from Andy Pung which included a KLAS Performance Report and eight additional documents which are unrelated to KLAS. The email was sent by Epic employee Andy Pung to employees of UIHC who would work in partnership with Epic to implement UIHC's rollout of an Epic program called Community Connect.

In relevant part, the anonymous requester requested copies of all correspondence, including email correspondence, from companies including Epic to UIHC related to KLAS. UIHC produced 354 pages of documents in response to the request, including a forwarded copy of the Andy Pung email without its attachments. The requester followed up by asking for the original Pung email with attachments at which time UIHC notified Epic about the request. Epic did not object to the release of the KLAS Performance Report, which had been attached to the email, but did object to the release of the remaining eight attachments. UIHC released the KLAS

1

Performance Report to the requester and has not been contacted by the requester since. The requester has likewise not intervened or otherwise participated in this case, despite being given notice. Seven of the eight disputed attachments do not mention KLAS in any way. The only disputed attachment that does mention KLAS is a marketing document which states without further elaboration that Epic is "Number 1 in KLAS" and "Best in KLAS."

Epic and UIHC are party to a License and Support Agreement. The agreement between Epic and UIHC contains a strict confidentiality provision which, among other things, obligates UIHC to maintain in confidence all Epic confidential information, which includes any information concerning the functionality, operation, use, or implementation of Epic software. The agreement limits access to Epic software and documentation, including materials related to its installation and operation, to employees and affiliate users who must have that access to make proper use of it in the customer's operations. The agreement further requires UIHC to store copies of the software code and its documentation only in secure places, and to use Epic-approved security technology if it creates web or computer-based training. The agreement prohibits UIHC from giving anyone access to Epic's software code or its documentation without informing them of the confidentiality obligation, and requires UIHC to notify Epic if UIHC knows that anyone has copied or obtained access to the software's code or its documentation without Epic's authorization.

One of the key ways that Epic has distinguished itself from its competitors is through the support it provides its customers, especially during initial implementation. Epic's customers are often large institutions with thousands of employees, all of whom must be prepared to start using Epic software on a "go live" date. The testimony received at trial indicates that Epic has earned the reputation for installations that are on time, done well, and below budget, and that it has attained this reputation through the development and continuous refinement of confidential installation, training, and go live tools and protocols and customer incentive programs that it uses to prepare for and achieve successful software implementations. It is reported that Epic developed these tools and methods through the devotion of substantial resources over many years and by virtue of its deep knowledge of the health care industry.

Epic developed a program called Epic Community Connect to expand its United States market to reach smaller health care providers. Through Community Connect, Epic allows its successful existing customers to expand their use of Epic software to smaller physician groups and hospitals in their geographic area. Epic provides its existing customers access to tools and instructions on how they can sell the program to these smaller organizations, as well as access to learnings and things such as sample contracts or pricing models used by other Epic customers who have successfully implemented the Community Connect program. The attachments to the Andy Pung email sent by Epic to UIHC relate to the Community Connect program. The attachments were received by the Court under seal as Exhibits 1.2 - 1.9 and have been reviewed by the Court. Epic argues that these attachments contain confidential information which distinguishes Epic from its competitors and gives Epic a competitive advantage by virtue of not being generally known to or readily ascertainable by Epic's competitors. Epic states that the information contained in the disputed attachments is not presently available to Epic's competitors and that its disclosure would cause substantial competitive harm to Epic.

As a preliminary matter, Epic argues that the email attachments in dispute are not responsive to the open record request of the anonymous requester. That request focused on documents related to KLAS and a review of the disputed attachments reveals that KLAS is only generically referenced in one of the eight disputed attachments. As a preliminary matter, the Court agrees with Epic that the disputed email attachments are outside of the scope of the original open records request. However, Epic further requests a declaratory judgment that the records constitute trade secrets not subject to disclosure, which is not limited to the specific request of the anonymous requester. Further, the anonymous requester followed up on the initial disclosure made by UIHC with a specific request for all of the attachments to the email from Andy Pung. Therefore, the Court must undertake a determination as to whether the disputed email attachments constitute confidential records under Iowa Code Section 22.7, or alternatively whether the release of these items should be enjoined under the provisions of Iowa Code Section 22.8.

The University of Iowa Hospitals and Clinics takes no position on whether the documents sought are confidential records. Rather, UIHC defers to the Court's determination and states that it will abide by whatever is ordered by the Court.

The Iowa Open Records Act contained in Iowa Code Chapter 22 generally requires state and local entities to make their records available to the public. The purpose of the statute is to open the doors of government to public scrutiny to prevent government from secreting its decision-making activities from the public, on whose behalf it is its duty to act. Iowa Film Production Services v. Iowa Department of Economic Development, 818 N.W.2d 207 (2012) citing City of Riverdale v. Diercks, 806 N.W.2d 643, 651 (Iowa 2011)(quoting Rathmann v. Board of Directors, 580 N.W.2d 773, 777 (Iowa 1998)). The act establishes "a presumption of openness and disclosure." Gabrilson v. Flynn, 554 N.W.2d 267, 276 (Iowa 1996).

However, the Open Records Act contains 69 categories of confidential records which Iowa Code Section 22.7 requires be kept confidential unless otherwise ordered by a court, by the lawful custodian of the records, or by another person duly authorized to release such information. Iowa Code Section 22.7(1-69).

The Iowa Supreme Court has found that disclosure is generally favored over non-disclosure, and that exemptions from disclosure are to be strictly construed and granted sparingly. U.S. West Communications, Inc. v. Office of Consumer Advocate, 498 N.W.2d 711 (Iowa 1993) citing Board of Directors of Davenport Community School District v. Quad City Times, 382 N.W.2d 80, 82 (Iowa 1986). There is a presumption in favor of disclosure and the Court gives a narrow interpretation to statutory exemptions from disclosure. Id.

The exception to disclosure alleged by Epic is that the information contained in the eight disputed attachments and the Pung email include "trade secrets which are recognized and protected as such by law" under Iowa Code Section 22.7(3). "Trade secrets" are defined under Iowa Code Section 550.2(4) as:

> "[Trade secret] means information, including, but not limited to, a formula, pattern, compilation, program, device, method, technique or process that is both of the following:

3

> (a) Derives independent economic value, actual or potential, from not being generally known to and not being readily ascertainable by a proper means by a person able to obtain economic value from its disclosure or use.
>
> (b) Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy."
> Iowa Code Section 550.2(4); see also Iowa Film Production Services v. Iowa Department of Economic Development, 818 N.W.2d 207, 219 (Iowa 2012).

The definition of a trade secret under Iowa Code Section 550.2(4) is a mixed question of law and fact. Iowa Film Production Services v. Iowa Department of Economic Development, 818 N.W.2d 207 citing Econ. Roofing and Insulating Co. v. Zumaris, 538 N.W.2d 641, 648 (Iowa 1995). The first part of the definition – "information, including but not limited to a formula, pattern, compilation, program, device, method, technique or process" – is a legal question. Id. (quoting Iowa Code Section 550.2(4)). Iowa Code Section 550.2(4)(a) and (b) present questions of fact. Id.

There is virtually no category of information that cannot, as long as the information is protected from disclosure to the public, constitute a trade secret. U.S. W. Commc'ns, Inc. v. Office of Consumer Advocate, 498 N.W.2d 711, 714 (Iowa 1993). Business information may fall within the definition of a trade secret, including such matters as maintenance of data on consumer lists and needs, sources of supplies, confidential costs, price data and figures. Trade secrets can range from customer information, to financial information, to information about manufacturing processes, to the composition of productions. Iowa Film Production Services v. Iowa Department of Economic Development, 818 N.W.2d 207 (Iowa 2012); Revere Tranducers, Inc. v. Deere and Company, 595 N.W.2d 751, 776 (Iowa 1999). There is no question that the disputed email attachments involved in this case qualify as "information" under Iowa Code Section 550.2(4).

Having determined that the email attachments which Epic seeks to protect is "information" under Iowa Code Section 550.2(4), the Court must determine, as a factual matter, whether such information derives independent economic value and is the subject of efforts that are reasonable under the circumstances to maintain its secrecy. In referring to "economic value", Iowa Code Section 550.2(4)(a) speaks to the value of the information to either the owner or a competitor. U.S. West Communications, Inc. v. Office of Consumer Advocate, 498 N.W.2d 711, 714 (Iowa 1993). Information kept secret that would be useful to a competitor and require cost, time and effort to duplicate is of economic value. U.S. West Communications, Inc. v. Office of Consumer Advocate, 498 N.W.2d 711, 714 (Iowa 1993). However, it is Epic's burden to prove that the information in the disputed email attachments derives independent economic value as required in Iowa Code Section 550.2(4)(a).

The disputed email attachments include information about Epic's business and marketing practices and methods, information about its software functionality, and technical and

4

performance characteristics and information about its implementation practices and methods. The Court is convinced by the testimony of Shawn Kiesau and from its own review of the disputed email attachments that each of the disputed email attachments derive independent economic value to Epic and from not being known to or ascertainable by Epic's competitors.

The Court further finds that Epic has satisfied the second prong of the trade secret test in Iowa Code Section 550.2(4)(b) – that the information is the subject of efforts that are reasonable under the circumstances to maintain its secrecy. See <u>Brown v. Iowa Legislative Counsel</u>, 490 N.W.2d 551 (Iowa 1992). When the disputed email attachments were provided to UIHC, they were subject to strict contractual limitations against further disclosure. Further, Epic regularly objects to the disclosure of similar information and has successfully litigated to prevent disclosure.

Since the Court finds that the information contained in the eight disputed email attachments derives independent economic value from not being known to or readily ascertainable by Epic's competitors, and because Epic has taken reasonable steps to maintain its secrecy, the information amounts to trade secrets under Iowa law and is not subject to disclosure by UIHC. Further, their nondisclosure may be enforced by injunction pursuant to Iowa Code Section 22.5, which the Court finds appropriate in this case.

In the event the Court disagreed with Epic and instead found that the disputed email attachments were public records subject to disclosure, Epic requested an injunction preventing disclosure pursuant to Iowa Code Section 22.8. Iowa Code Section 22.8 provides the Court with an alternative avenue for enjoining the disclosure of records "independent of the general injunctive powers available under the other provisions of the Open Records Law, including Section 22.7." <u>Gabrilson v. Flynn</u>, 554 N.W.2d 267, 274 (Iowa 1996). See also <u>Iowa Film Prod. Serv. v. Iowa Dep't. of Econ. Dev.</u>, 818 N.W.2d 207, 218-19 (Iowa 2012). Since the Court finds that the disputed email attachments are protected as trade secrets, it is not necessary to determine whether alternative injunctive relief should be granted under Section 22.8. However, it appears clear to the Court based on the facts of this case that disclosure of the information is not in the public interest and would substantially and irreparably injure Epic. Therefore, even if the Court were instead to deny Epic's claim of trade secrets, it would have nonetheless granted injunctive relief under Section 22.8.

IT IS THEREFORE ORDERED that the Petition filed April 6, 2016, is GRANTED as the records sought are confidential records.

IT IS FURTHER ORDERED that the University of Iowa Hospitals and Clinics is enjoined from permitting examination of the disputed attachments to the email sent by Epic employee Andy Pung to employees of UIHC on May 14, 2015, which were admitted by the Court under seal as Exhibits 1.2 – 1.9, except to the extent permitted by the parties' License and Support Agreement.

Clerk to notify.



State of Iowa Courts

**Type:** OTHER ORDER

**Case Number**     **Case Title**
EQCV078016     *SEALED DOCS*EPIC SYSTEMS CORPORATION V. UIHC

So Ordered

*[Signature: Chad A. Kepros]*

Chad Kepros, District Court Judge,
Sixth Judicial District of Iowa

Electronically signed on 2017-07-18 13:07:57     page 6 of 6